UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

CIVIL ACTION NO.

_____
                                    )
PEPPERCORN FOOD SERVICES, INC.      )
                                    )
           Plaintiff,               )
                                    )
v.                                  )
                                    )
ATLANTIC PACKAGING GROUP, LLC       )
                                    )
and                                 )
                                    )
JOE PIPER, INC.                     )
                                    )
           Defendants.              )
_____ )

## COMPLAINT AND JURY DEMAND

For its Complaint, Plaintiff Peppercorn Food Services, Inc. states as follows:

### PARTIES AND JURISDICTION

1. Plaintiff Peppercorn Food Services, Inc. ("Peppercorn") is a Massachusetts corporation with its principal office located in Boston, MA.

2. Defendant Atlantic Packaging Group, LLC ("Atlantic") is a Connecticut limited liability company with its principal office located in Norwich, CT.

3. Defendant Joe Piper, Inc. ("Piper") is an Alabama corporation with its principal office located in Birmingham, AL.

4. Jurisdiction is based on 28 U.S.C. § 1332 as there is diversity of citizenship between the parties and the amount in controversy exceeds the sum of seventy-five-thousand dollars ($75,000.00).

5.     These claims arise out of Defendants' transacting business in the Commonwealth of Massachusetts; contracting to supply goods to and in the Commonwealth; soliciting business, engaging in a persistent course of commercial conduct and deriving substantial revenue from the sale of goods in the Commonwealth; and causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth as it regularly does or solicits business, or engages in other persistent course of conduct or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth.

6.     Upon information and belief, Atlantic and Piper have conducted regular and sustained business in Massachusetts by selling products to customers in Massachusetts.

7.     As described further below, Atlantic and Piper sell and distribute and place their products in the stream of commerce knowing that such products will be sold and used in the Commonwealth of Massachusetts, as was the case in this action.

## FACTUAL BACKGROUND

8.     Peppercorn is in the business of manufacturing and selling ready-to-cook frozen food products that are sold in supermarkets throughout the United States.  Peppercorn's products are designed to be kept frozen until use, and then placed directly in the oven by the end consumer without further preparation being necessary.

9.     Starting in January, 2010, Peppercorn purchased certain ovenable packaging materials from Atlantic for use in packaging Peppercorn's frozen food products, including Peppercorn's private label frozen spinach pie product that Peppercorn manufactured and sold to its largest customer, Trader Joe's, which, marketed the spinach pie products at retail to end consumers under the "Trader Joe's" label.

10. Upon information and belief, Atlantic purchased the paperboard used in the packaging materials sold to Peppercorn from Piper, which markets itself as the premier distributor of job lot paperboard in North America.

11. Piper expressly represented in its advertising that its paperboard product is ovenable and suitable for use with food products.

12. Atlantic expressly represented to Peppercorn that the paperboard and packaging materials being provided to Peppercorn were suitable for use by Peppercorn as ovenable packaging for its frozen food products, including the Trader Joe's spinach pie product.

13. The paperboard and packaging materials sold by Atlantic to Peppercorn were defective and not suitable for Peppercorn's use as ovenable packaging for its frozen food products.

14. The paperboard used in preparing the packaging was defective as it did not adequately prevent moisture infiltration, which caused the packages to delaminate and lose rigidity and blister after being placed in freezers and the structure of the packaging was therefore significantly compromised.

15. As a result of the compromised packaging, the spinach pie packages shipped by Peppercorn to its principal customer, Trader Joe's, became wrinkled and degraded, which adversely affected their appearance to the consumer viewing the product in the Trader Joe's display cases and thus dramatically impacted the sales of the Trader Joe's spinach pie product.

16. In addition, the paperboard used in the packaging materials provided to Peppercorn was misrepresented by Atlantic as being 20 point paperboard, rather than what was actually provided, which was 18 point paperboard. Peppercorn was unaware that it received only 18 point paperboard rather than the 20 point paperboard that it had been promised by Atlantic.

17. As a direct and proximate result of the defects inherent in the packaging materials, Peppercorn sustained significant damages in excess of $75,000.

18. Atlantic and Piper were negligent and their negligence was a substantial contributing factor in causing the damages sustained by Peppercorn.

19. As a direct and proximate result of the defective paperboard and packaging materials and defendants' breach of their obligations, Peppercorn has suffered significant damage and loss, including, but not limited to, the loss of its valuable supply agreement with Trader Joe's, resulting in damages of approximately $1 million in lost profits.

## COUNT I
## BREACH OF EXPRESS WARRANTIES
### (Against Piper and Atlantic)

20. Peppercorn incorporates herein by reference all of the preceding paragraphs of this complaint.

21. Piper expressly warranted through its advertising that its paperboard is suitable for use as ovenable board for food products.

22. Atlantic expressly warranted that the packaging materials sold to Peppercorn would be suitable for Peppercorn's use as packaging for its frozen food products.

23. Atlantic further expressly warranted that the paperboard used in the packaging materials provided to Peppercorn was 20 point paperboard, rather than what was actually provided, which was 18 point paperboard.

24. Piper and Atlantic breached their express warranties by providing paperboard and packaging materials that were defective and not suitable for use as ovenable packaging for Peppercorn's food products as such paperboard and packaging were defective as they did not

adequately prevent moisture infiltration, which caused the packages to delaminate and lose rigidity and blister and the structure of the packaging was significantly compromised.

25. As a result of the compromised packaging, the spinach pie packages shipped by Peppercorn to its principal customer, Trader Joe's, became wrinkled and degraded, which adversely affected their appearance to the consumer viewing the product in the Trader Joe's display cases and thus dramatically impacted the sales of the Trader Joe's spinach pie product.

26. In addition, the paperboard provided to Peppercorn was misrepresented by Atlantic as being 20 point paperboard rather than what was actually provided, which was 18 point paperboard.

27. As a direct and proximate result of the defects inherent in the paperboard and packaging materials, Peppercorn sustained significant damages in excess of $75,000.

## COUNT II
## BREACH OF IMPLIED WARRANTIES
### (Against Piper and Atlantic)

28. Peppercorn incorporates herein by reference all of the preceding paragraphs of this complaint.

29. Piper and Atlantic impliedly warranted that the paperboard and packaging materials, respectively, were merchantable and were fit for the ordinary purposes for which they were intended.

30. When Peppercorn used the paperboard and packaging materials for its frozen food products, including the Trader Joe's spinach pie, Peppercorn was using such paperboard and packaging materials for the ordinary purposes for which they were intended.

31. Peppercorn relied upon Defendants' implied warranties of merchantability and fitness for ordinary purposes in using such products for packaging its frozen food products, including the Trader Joe's spinach pie.

32. Piper and Atlantic breached these implied warranties of merchantability and fitness for ordinary purposes by providing paperboard and packaging materials that were not suitable for ordinary use as ovenable packaging for Peppercorn's food products as such paperboard and packaging were defective in that they did not adequately prevent moisture infiltration, which caused the packages to delaminate and lose rigidity and blister and the structure of the packaging was significantly compromised.

33. As a result of the compromised packaging, the spinach pie packages shipped by Peppercorn to its principal customer, Trader Joe's, became wrinkled and degraded, which adversely affected their appearance to the consumer viewing the product in the Trader Joe's display cases and thus dramatically impacted the sales of the Trader Joe's spinach pie product.

34. As a direct and proximate result of the breach of implied warranties and defects in the paperboard and packaging materials, Peppercorn sustained significant damages in excess of $75,000.

**COUNT III**
**NEGLIGENCE**
**(Against Piper and Atlantic)**

35. Peppercorn incorporates herein by reference all of the preceding paragraphs of this complaint.

36. Piper and Atlantic owed Peppercorn a duty to use due and reasonable care in the manufacture and sale of the paperboard and packaging materials that were sold to Peppercorn.

37. Piper and Atlantic breached their duty of reasonable care by providing defective products to Peppercorn.

38. As a direct and proximate result of such breach Peppercorn sustained significant damages in excess of $75,000.

## COUNT IV
## BREACH OF CONTRACT
### (Against Atlantic)

39. Peppercorn incorporates herein by reference all of the preceding paragraphs of this complaint.

40. Atlantic and Peppercorn entered into a contract by which Atlantic was to provide paperboard and packaging materials suitable for Peppercorn's frozen food products, including the Trader Joe's spinach pie and Peppercorn agreed to pay for same.

41. Peppercorn fully performed under the parties' contract but Atlantic failed to perform under the contract by providing defective paperboard and packaging materials to Peppercorn that did not meet Peppercorn's needs.

42. As a direct and proximate result of such breach Peppercorn sustained significant damages in excess of $75,000.

## COUNT V
## BREACH OF CONTRACT -- THIRD PARTY BENEFICIARY
### (Against Piper)

43. Peppercorn incorporates herein by reference all of the preceding paragraphs of this complaint.

44. Atlantic and Piper entered into a contract by which Piper was to provide Atlantic with paperboard that was suitable for use as ovenable board for food products.

45. Piper breached that contract by providing defective paperboard that was not suitable for such use.

46. Peppercorn was an intended and foreseeable third-party beneficiary of the contract between Atlantic and Piper.

47. As a direct and proximate result of Piper's breach, Peppercorn sustained significant damages in excess of $75,000.

## COUNT VI
## NEGLIGENT MISREPRESENTATION
### (Against Atlantic)

48. Peppercorn incorporates herein by reference all of the preceding paragraphs of this complaint.

49. Atlantic represented to Peppercorn that the paperboard being provided to Peppercorn was of 20 point type and suitable for Peppercorn's frozen food products, including the Trader Joe's spinach pie.

50. That representation was untrue as the paperboard being provided to Peppercorn was unsuitable for its use and was only 18 point type.

51. Atlantic knew or should have known that such representation was false.

52. As a direct and proximate result of such breach Peppercorn sustained significant damages in excess of $75,000.

## COUNT VII
## UNFAIR AND DECEPTIVE BUSINESS PRACTICE IN VIOLATION OF § 93A
### (Against Piper and Atlantic)

53. Peppercorn incorporates herein by reference all of the preceding paragraphs of this complaint.

54. At all relevant times Piper and Atlantic were engaged in trade and/or commerce within the meaning of M.G.L. c.93A, Sections 2 and 11.

55. The above-referenced acts and practices engaged in by Piper and Atlantic constitute unfair and deceptive business acts and practices within the meaning of M.G.L. c.93A, Sections 2 and 11.

56. The unfair and deceptive acts and practices of Piper and Atlantic were willful and knowing violations of M.G.L. c.93A, Sections 2 and 11.

57. As a direct and proximate result of Defendants' use or employment of unfair and deceptive acts and practices, Peppercorn has suffered and continues to suffer the loss of money and/or property in excess of $75,000 in an amount to be proven at trial.

## REQUESTED RELIEF

**WHEREFORE**, Peppercorn respectfully requests that the Court enter judgment awarding Peppercorn money damages in excess of $75,000, which damages at the current time are estimated to include $1 million in lost profits to be proven at trial under each of the Counts stated herein, as well as double or treble damages and attorneys' fees under Chapter 93A, plus interest and costs, and grant any further relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Dated: September 19, 2012	Respectfully submitted,

PEPPERCORN FOOD SERVICES, INC.
By its counsel:

Andrew Gately, Esq.
B.B.O. No. 645606
316 Franklin Street
Newton, MA 02458
TEL 617-969-8555
FAX 617-969-5552

-- and --

TAMKIN & HOCHBERG, LLP
Robert P. Joyce, Jr.

9

BBO # 629567
313 Washington Street #202
Newton, MA 02458
TEL 617-964-2501
FAX 617-964-7755

**ATTORNEYS FOR PLAINTIFF
PEPPERCORN FOOD SERVICE, INC.**